## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Market Square Shopping Center, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Lincoln Park Climbing, LLC, a Delaware | ) | |
| Limited Liability Company, d/b/a "Brooklyn | ) | **JURY DEMANDED** |
| Boulders Lincoln Park," Brooklyn Boulders | ) | |
| Investments, LLC, a Delaware Limited Liability | ) | |
| Company, Taglich Private Equity, LLC a | ) | |
| Delaware Limited Liability Company, and Gary | ) | |
| Kurnov, an individual. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Market Square Shopping Center, LLC ("Plaintiff"), by and through its attorneys, Ellis Legal P.C., for its Complaint at Law against Defendants, Lincoln Park Climbing, LLC, a Delaware Limited Liability Company, d/b/a "Brooklyn Boulders Lincoln Park," Brooklyn Boulders Investments, LLC, a Delaware Limited Liability Company, Taglich Private Equity, LLC a Delaware Limited Liability Company, and Gary Kurnov ("Kurnov"), an individual, and in support thereof alleges as follows:

## THE PARTIES

1.      Plaintiff, Market Square Shopping Center, LLC, is a limited liability company, duly organized and existing under and by virtue of the State of Illinois, with its principal office located at 1142 W. Madison, Ste 401 Chicago, IL 60607.

2.      Upon information and belief, Defendant Lincoln Park Climbing, LLC d/b/a "Brooklyn Boulders Lincoln Park" is a Delaware limited liability company.

3.      Brooklyn Boulders Investments, LLC, is a Delaware limited liability company which upon information and belief, owns Lincoln Park Climbing, LLC and two other locations operating under the "Brooklyn Boulders" trade name—Brooklyn Boulders West Loop and Brooklyn Boulders Queensbridge.

4.      Taglich Private Equity, LLC is a Delaware limited liability company which upon information and belief owns Brooklyn Boulders Investments, LLC.

5.      Gary Kurnov is a principal of Taglich Private Equity and a manager of Lincoln Park Climbing and Brooklyn Boulders Investments. Kurnov is resident of Florida.

6.      None of the members of Lincoln Park Climbing, LLC, Brooklyn Boulders Investments, LLC, and Taglich Private Equity, LLC are Illinois residents or domiciled in Illinois.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs.

8.      This Court also has jurisdiction over Defendants pursuant to 735 Ill. Comp. Stat. Ann. 5/2-209(b)(4) because Defendants do business within Illinois and because a substantial amount of the conduct giving rise to this claim took place in, or was directed toward, Illinois.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because a substantial part of the property that is the subject of this action was situated in this district.

10. Kurnov was directly involved in the communications between Plaintiff and Defendant Lincoln Park Climbing, LLC as it related to the Lease Agreement entered into in the State of Illinois.

11. Kurnov's communications with Plaintiff form the basis of Plaintiff's claims for fraud. Additionally, Kurnov was directly involved in the sale of Plaintiff's property by Lincoln Park Climbing, LLC and the subsequent payments to Brooklyn Boulders Investments, LLC and Taglich Private Equity, LLC which form the basis of Plaintiff's claims brought under the Uniform Fraudulent Transfer Act.

12. Brooklyn Boulders Investments, LLC and Taglich Private Equity, LLC both received fraudulently transferred funds that were duly owed to Plaintiff pursuant to the Lease Agreement entered into in the State of Illinois.

**Factual Allegations Common to All Counts**

*The Lease Agreement*

13. Pursuant to the terms of a written lease agreement, dated June 19, 2019, ("the Lease"), North Side Climbing Gym Company, LLC ("North Side"), leased from Plaintiff approximately 37,197 square feet located in the unit commonly known as 2121 North Clybourn, Chicago, Illinois. *See Lease Agreement attached as Exhibit A,* Section 2.2.

14. Under the terms of the Lease, Tenant agrees to pay base rent as defined in the Lease and as set forth in Section 1.1.7 from 2019 through 2039. *See* Ex. A, Section 1.17.

15. Tenant further agrees to pay additional expenses including but not limited to expenses related to attorney fees, property taxes, utility costs, and common area charges associated with the Premises. *See* Ex. A, Sections 9.4, 7.1.14, 5.1, and 4.3.

16.     The Lease was subsequently amended on two separate occasions. *See First Amendment and Second Amendment to the Lease attached as Group Exhibit B.*

17.     

18.

19.

20.

21.     Upon information and belief, after assuming its obligations under the Lease, Lincoln Park Climbing had reason to believe that it would not be able to maintain its obligations under the lease through the remainder of the Lease Term.

***Defendants Fail to Make Timely Payments to Plaintiff***

22.     By June 2022, Lincoln Park Climbing failed to pay its share of property taxes due under the Lease.

23.     On June 13, 2022, Plaintiff's agent and principal, Christ Kamberos, called Kurnov to demand payment of the unpaid property taxes.

24.     During this call, Plaintiff made a demand for the unpaid property taxes.

25.     In response, Kurnov represented that Lincoln Park Climbing was temporarily unable to make the tax payments owed by Lincoln Park Climbing under the Lease.

26.     Kurnov further assured Plaintiff that Lincoln Park Climbing would make the required payment upon receipt of an Employee Retention Tax Credit.

27.     Plaintiff took Kurnov's representation as true and held off on enforcing Plaintiff's rights under the Lease, including the right to payment.

28.     Less than two months later, on August 1, 2022, Lincoln Park Climbing failed to make its required rental payment owed under the Lease.

29.     Following Lincoln Park Climbing's failure to pay the August rent, Plaintiff sent a Notice of Termination of Right to Possession (the "Termination Letter"). *Notice of Termination of Right to Possession attached as Exhibit D.*

30.     In the Termination Letter, Plaintiff gave Defendants five days to reconcile its unpaid balance.

31.     Lincoln Park Climbing failed to do so.

32.     On August 19, 2022, a telephone conference was held between principals for Plaintiff and Lincoln Park Climbing and their respective attorneys.

33.     During that call, Kurnov represented that Lincoln Park Climbing was shutting down operations and would not make any additional payments under the Lease.

34.     Kurnov further informed Plaintiff that Lincoln Park Climbing sold equipment held at the Premises including gym equipment, climbing equipment, climbing handholds, and furniture for approximately $100,000. The true value of this equipment, however, far exceeded the price Lincoln Park Climbing sold it for.

35.     Additionally, Kurnov revealed that Lincoln Park Climbing was never owed money under an Employee Retention Tax Credit.

36. Kurnov further revealed that Lincoln Park Climbing had made certain payments following the sale of the equipment to its affiliate companies since assuming the Lease and becoming indebted to Plaintiff.

37. Separate and apart from transferring the proceeds from the equipment sale to its affiliates, Lincoln Park Climbing transferred additional funds to its parent and affiliate companies.

38. When asked to quantify the payments and transfers, Kurnov refused to do so.

39. After the August 19, 2022 call, Plaintiff terminated Lincoln Park Climbing's right to possession of the Premises.

40. Per Section 9.4 of the Lease, Plaintiff is authorized to terminate tenant's right to possession without terminating the entirety of the Lease. Under such circumstances, the tenant remains obligated to pay all rent payments duly owed under the lease for the full term of the lease.

41. Defendants, however, have not made the requested payments and continue to owe funds to Plaintiff under the Lease.

42. On or about August 25, 2022, Lincoln Park Climbing moved out of the Premises.

43. At the time Plaintiff's sent the Notice of Termination of Right to Possession, Defendants owed to Plaintiff $122,794.45 to Plaintiff.

44. Additionally, Defendants owe $24,505,347.49 in base rent and approximately $10,159,614.85 in common area charges for the remaining years left on the Lease term which expires in 2039.

45. Despite Plaintiff's demands, Defendants did not pay to Plaintiff the unpaid rent or expenses duly owed to Plaintiff.

***Lincoln Park Climbing Defaults on its Lease***

46.     Section 9.1 of the Lease lists the Events of Default by which Lincoln Park Climbing would default under the Lease.

47.     Included in the Events of Default under the Lease are the following terms:

> (F) Tenant shall permanently vacate the Lease Premises or permanently abandon same during the term hereof; or
>
> (G) Tenant shall default in making any payment of rent or other payment required to be made by Tenant hereunder when due as herein provided and after five (5) business' day's written notice or
>
> (H) Tenant shall repeatedly be late in the payment of rent or other payment required to be paid hereunder or shall repeatedly default in the keeping, observing, or performing of any other covenants or agreements herein contained to be kept, observed, or performed by Tenant. "Repeatedly" means three (3) events within any one (1) calendar year.
>
> *See* Ex. A, 9.1 (A)-(K)

48.     Pursuant to Section 9.4, Plaintiff had the authority to elect to terminate Lincoln Park Climbing's right to possession upon the occurrence of any one of the Events of Default listed in Section 9.1 and demand possession of the Premises.

49.     Section 9.4 further holds that Lincoln Park Climbing shall pay to Plaintiff damages equal to the amount of rent and other sums duly owed under the Lease for the remainder of the Lease Term on a monthly basis as if the Tenant was still operating at the Premises in the event that Plaintiff has not yet re-let the Premises.

50.     **Pursuant to Section 9.4,** Landlord may file suit to recover any sums falling due under the terms of this Section 9.4 and recover all costs and expenses of Landlord, including attorney's fees, incurred in connection with any such suit.

51.     Plaintiff has made diligent efforts to re-let the Premises but has been unable to find a suitable tenant.

52.     At all relevant times to the Lease, Plaintiff has performed all conditions of the Lease required by it to be performed and has not received any notice from Defendants asserting any default by Plaintiff.

**Security Owed Under the Lease**

53.     ████████████████████████████████████

████████████████████████████████████████████

████████

54.     Plaintiff secured the Lease by obtaining a lien and security interest in North Side's personal property pursuant to Section 9.5 of the Lease.

55.     ████████████████████████████████████

████████████████████████████████████████████

56.     Despite Plaintiff's lien on Lincoln Park Climbing's personal property, Lincoln Park Climbing sold personal property located at the Premises including crash pads used to operate the business as a rock-climbing gym.

57.     The approximate value of the personal property sold by Lincoln Park Climbing was approximately $750,000.

58.     Upon information and belief, Lincoln Park Climbing paid its affiliate and parent companies, including Brooklyn Boulders Investments and Taglich Private Equity, out of the proceeds of the sales.

59.     Due to the security lien and interest that Plaintiff had in Lincoln Park Climbing's personal property, the proceeds of the sale of such property rightfully belonged to Plaintiff.

60.     Plaintiff, however, did not receive the proceeds of the sales.

61.     As a result of the sale of this personal property, Plaintiff will be forced to expend significant funds to re-furnish the gym as a rock climbing gym.

62.     Said expenses include purchasing $400,000 worth of exercise and gym equipment and approximately $350,000 in hand holds and climbing equipment necessary for Plaintiff to continue to operate this location as a rock climbing gym.

## Count I—Plaintiff v. Lincoln Park Climbing, LLC
### Breach of Contract

63.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

64.     ███████████████████████████████████

███████████████████████████████████████████

███████

65.     During such time, Lincoln Park Climbing agreed to pay monthly rent to Plaintiff per the Lease agreement in addition to other expenses set forth in the Lease and the subsequent Amendments to the same.

66.     By June 2022, Lincoln Park Climbing failed to pay the property taxes owed under the Lease.

67.     By August 1, 2022, Lincoln Park Climbing failed to pay the monthly rental payments owed under the Lease.

68.     In each instance, Plaintiff made a demand for the payments to be made.

69.     In each instance, Lincoln Park Climbing failed to cure its failure to pay the amounts owed.

70.     As such, Plaintiff terminated Lincoln Park Climbing's right to possession of the Lease while continuing Lincoln Park Climbing's obligations to pay rent and other amounts owed.

71. To date, Lincoln Park Climbing has not paid certain amounts due and stipulated under the Lease to be paid and is now delinquent for rent due under the Lease.

72. All conditions precedent to Plaintiff's enforcement of the Lease have been performed by Plaintiff or excused by the Defendants.

73. As of the date of filing this Complaint, Lincoln Park Climbing has failed to cure, and Plaintiff has not excused Lincoln Park Climbing from, its obligations to pay rent, as well as other costs and fees, under the Lease.

74. Plaintiff now brings this action to recover the delinquent rent, and any and all other unpaid sums that have become due and owing to Plaintiff under the Lease through the date of judgement.

75. As of the date of this Complaint, there is currently due and owing to Plaintiff under the lease:

    a. Tenant's unpaid rent at the time Plaintiff terminated Tenant's possession of the premises in the amount of $122,794.45;

    b. Additional base rent for the remainder of the Lease term in the amount of $24,505,347.49;

    c. Additional common area charges for the remainder of the Lease term in the amount of $10,159,614.85;

    d. Plaintiff's costs associated with replacing the equipment improperly sold by the Defendant;

    e. Fees and interest to be proven at trial; and

    f. Reasonable attorneys' fees and court costs incurred by Plaintiff in this action.

WHEREFORE, Plaintiff requests judgement in its favor and against Defendant Lincoln Park Climbing, LLC in the sum no less than $34,787,756.79 or such other amount to be proven at trial, consequential damages resulting from Defendant's improper sale, interest, late fees, Plaintiff's reasonable attorneys' fees and costs of suit, and for any other relief this Court deems just and reasonable.

## Count II—Plaintiff v. Lincoln Park Climbing, LLC

### *Violation of the Uniform Fraudulent Transfer Act*

76.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

77.     At all times relevant to the allegations of this Complaint, there existed 740 ILCS 160/1, *et seq.,* more commonly referred to as the Uniform Fraudulent Transfer Act (the "UFTA").

78.     Section 5(a)(1) of the UFTA states:

a.   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation.

(1)   With actual intent to hinder, delay, or defraud any creditor of the debtor; or
(2)   without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(B) intended to incur or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

### *Lincoln Park Climbing Sells its Equipment and Transfers the Proceeds to Its Affiliates*

79.     Plaintiff held a security interest in Lincoln Park Climbing's personal property.

80.     Brooklyn Boulder Investments and Taglich Private Equity, through Gary Kurnov, were aware that Plaintiff held a security interest in Lincoln Park Climbing's personal property including its gym and climbing equipment.

81.     Lincoln Park Climbing subsequently sold approximately $750,000 of personal property consisting primarily of gym and climbing equipment.

82.     This equipment rightfully belonged to Plaintiff as the lienholder and was required for Plaintiff to lease the Premises as a rock climbing gym.

83.     Plaintiff, however, did not receive any payments following the sale of the equipment.

84.     Instead, Plaintiff learned that Lincoln Park Climbing made payments to its affiliate and parent companies, Brooklyn Boulder Investments and Taglich Private Equity, out of the proceeds from the sale.

85.     Lincoln Park Climbing transferred the proceeds from the sale with the intent to prevent Plaintiff from receiving said funds.

86.     The proceeds from the sale were transferred by Lincoln Park Climbing to its affiliates once Lincoln Park Climbing had reason to believe that it would be incurring debts that it would be unable to pay.

87.     The payments from the sale of Lincoln Park's personal property were fraudulent as Plaintiff had a security interest in the properties that were sold.

88.     Lincoln Park Climbing's transfers were to insider entities including its parent companies, Brooklyn Boulders Investments and Taglich Private Equity.

89.     Lincoln Park Climbing concealed the sale of the equipment and did not notify Plaintiff of the sale until after it was effectuated. Indeed, Plaintiff was not notified of the date of the sale.

90.     Upon information and belief, the sale of this equipment was made at or near the same time Lincoln Park Climbing had reason to believe it would be unable to make its necessary payments under the Lease.

91.     Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it made the sale, but it effectuated the sale in an effort to diminish its ability to pay its debts to Plaintiff.

92.     The sale of this equipment consisted of a substantial amount of Lincoln Park Climbing's physical assets.

93.     Furthermore, Lincoln Park Climbing sold this personal property, including gym equipment and the equipment needed to operate a rock climbing gym, for a substantially lower amount than its commercial value.

94.     Moreover, Lincoln Park Climbing sold various items such as crash pads that were essential to the operation of its business at the Premises.

95.     As a result of the sale of these items, the Premises was rendered largely unusable for an extended period of time.

96.     Pursuant to 740 ILCS 160/9, a creditor may recover judgment for the value of assets transferred at the time of the transfer subject to adjustments.

97.     To date, Plaintiff has not received payments from Lincoln Park Climbing related to the personal property and equipment that it held a security interest in.

***Separate and Apart from the Sale of the Equipment, Lincoln Park Climbing Transferred Funds to Its Affiliates During the Lease Term***

98.     Upon information and belief, after assuming its obligations under the Lease, Lincoln Park Climbing had reason to believe that it would not be able to maintain its obligations through the remainder of the Lease Term.

99.     Lincoln Park Climbing reasonably knew that it would be unable to pay any debts incurred under the Lease.

100.     After it had reason to belief it would incur debts that it would not be able to pay, Lincoln Park Climbing transferred funds to its parent and affiliate companies, including Brooklyn Boulders Investments and Taglich Private Equity.

101.     These transfers were made so that Lincoln Park Climbing's affiliate companies would receive funds before Plaintiff received the funds it was owed under the Lease.

102.     Lincoln Park Climbing made these transfer to hinder or delay its obligation to pay Plaintiff both before and after defaulting on the Lease.

103.     During the Lease Term, Lincoln Park Climbing concealed these transfers from Plaintiff despite knowing that Lincoln Park Climbing would be unable to pay rent and other fees owed under the Lease.

104.     Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it began to transfer funds to its affiliate companies and did so in an effort to diminish its ability to pay Plaintiff.

105.     Lincoln Park Climbing made ongoing and regular payments to its affiliate companies including Brooklyn Boulders Investments and Taglich Private Equity. These transfers consisted of a substantial amount of Lincoln Park Climbing's assets.

106.     Less than a year into the Lease, Lincoln Park Climbing defaulted on the Lease.

107.     After defaulting on the Lease, Lincoln Park Climbing transferred funds to its parent and affiliate companies, including Brooklyn Boulders Investments and Taglich Private Equity.

108. These transfers were made so that Lincoln Park Climbing's affiliate companies would receive funds before Plaintiff received the funds it was owed under the Lease and from the resulting default.

109. Lincoln Park Climbing made these transfer to hinder or delay its obligation to pay Plaintiff after defaulting on the Lease.

110. During the Lease Term, Lincoln Park Climbing concealed these transfers from Plaintiff despite knowing that Lincoln Park Climbing was in default and was unable to pay its debts.

111. Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it began to transfer funds to its affiliate companies and did so in an effort to diminish its ability to pay Plaintiff.

112. Lincoln Park Climbing made ongoing and regular payments to its affiliate companies including Brooklyn Boulders Investments and Taglich Private Equity. These transfers consisted of a substantial amount of Lincoln Park Climbing's assets.

113. Plaintiff, as Lincoln Park Climbing's creditor, is entitled to the amount of any such transfer of funds.

WHEREFORE, Plaintiff requests judgement in its favor and against Defendant Lincoln Park Climbing, LLC in the sum to be determined at trial, but not less than the value of the assets at the time they were transferred subject to any adjustments approved by this Court or such other amount to be proven at trial, Plaintiff's costs associated with replacing the equipment improperly sold by the Defendant, Plaintiff's reasonable attorneys' fees and costs of suit, and for any other relief this Court deems just and reasonable.

## Count III—Plaintiff v. Brooklyn Boulders Investment, LLC

### *Violation of the Uniform Fraudulent Transfer Act*

114.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

115.    At all times relevant to the allegations of this Complaint, there existed 740 ILCS 160/1, *et seq.,* more commonly referred to as the Uniform Fraudulent Transfer Act (the "UFTA").

116.    Section 5(a)(1) of the UFTA states:

a.    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation.

   (1)    With actual intent to hinder, delay, or defraud any creditor of the debtor; or
   (2)    without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
     (A)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
     (B) intended to incur or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

117.    Pursuant to 740 ILCS 160/9, a creditor may recover judgment for the value of assets transferred at the time of the transfer subject to adjustments.

118.    Pursuant to 740 ILCS 160/9(b)(1) and (2), (b) a creditor may recover judgment (1) the first transferee of the asset or the person for whose benefit the transfer was made; or (2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.

### *Lincoln Park Climbing Sells its Equipment and Transfers the Proceeds to Its Affiliates*

119.    Plaintiff held a security interest in Lincoln Park Climbing's personal property.

120. Brooklyn Boulder Investments and Taglich Private Equity, through Gary Kurnov, were aware of Lincoln Park Climbing's Lease Agreement with Plaintiff and Lincoln Park Climbing's financial situation at all relevant times to the events of this Complaint.

121. Brooklyn Boulders Investments, through Kurnov, was aware that Plaintiff held a security interest in Lincoln Park Climbing's personal property including its gym and climbing equipment.

122. During the Lease Term, Lincoln Park Climbing sold approximately $750,000 of personal property consisting primarily of gym and climbing equipment.

123. This equipment rightfully belonged to Plaintiff as the lienholder and was required for Plaintiff to lease the Premises as a rock climbing gym.

124. Plaintiff, however, did not receive any payments following the sale of the equipment.

125. Instead, Plaintiff learned that Lincoln Park Climbing made payments to its affiliate and parent companies, Brooklyn Boulder Investments and Taglich Private Equity, out of the proceeds from the sale.

126. Lincoln Park Climbing transferred the proceeds from the sale with the intent to prevent Plaintiff from receiving said funds.

127. The proceeds from the sale were transferred by Lincoln Park Climbing to its affiliates once Lincoln Park Climbing had reason to believe that it would be incurring debts that it would be unable to pay.

128. The payments from the sale of Lincoln Park's personal property were fraudulent as Plaintiff had a security interest in the properties that were sold.

129. Lincoln Park Climbing's transfers were to insider entities including its parent companies, Brooklyn Boulders Investments and Taglich Private Equity.

130. Lincoln Park Climbing concealed the sale of the equipment and did not notify Plaintiff of the sale until after it was effectuated. Indeed, Plaintiff was not notified of the date of the sale.

131. Brooklyn Boulders Investments did not notify Plaintiff that the sale of Lincoln Park's climbing had taken place.

132. Brooklyn Boulders Investments did not notify Plaintiff that it received payments from Lincoln Park Climbing's sale of Lincoln Park Climbing's personal property.

133. Upon information and belief, the sale of this equipment was made at or near the same time Lincoln Park Climbing had reason to believe it would be unable to make its necessary payments under the Lease.

134. Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it made the sale, but it effectuated the sale in an effort to diminish its ability to pay its debts to Plaintiff.

135. Brooklyn Boulders Investments, through Kurnov, knew that Lincoln Park Climbing had reason to believe it would not be able to meet its obligations under the Lease.

136. Brooklyn Boulders Investments, through Kurnov, knew of the possibility that legal action may be taken against Lincoln Park Climbing due to its inability to meet its obligations under the Lease.

137. The sale of this equipment consisted of a substantial amount of Lincoln Park Climbing's physical assets.

138.     Furthermore, Lincoln Park Climbing sold this personal property, including gym equipment and the equipment needed to operate a rock climbing gym, for a substantially lower amount than its commercial value.

139.     Moreover, Lincoln Park Climbing sold various items such as crash pads that were essential to the operation of its business at the Premises.

140.     As a result of the sale of these items, the Premises was rendered largely unusable for an extended period of time.

141.     To date, Plaintiff has not received payments from Lincoln Park Climbing related to the personal property and equipment that it held a security interest in.

***Separate and Apart from the Sale of the Equipment, Lincoln Park Climbing Transferred Funds to Its Affiliates During the Lease Term***

142.     Upon information and belief, after assuming its obligations under the Lease, Lincoln Park Climbing had reason to believe that it would not be able to maintain its obligations through the remainder of the Lease Term.

143.     Brooklyn Boulders Investments also had reason to believe that Lincoln Park Climbing would not be able to maintain its obligations through the remainder of the Lease Term.

144.     Brooklyn Boulders and Lincoln Park Climbing reasonably knew that Lincoln Park Climbing would be unable to pay any debts incurred under the Lease.

145.     Subsequently, Lincoln Park Climbing transferred funds to its parent and affiliate companies, including Brooklyn Boulders Investments and Taglich Private Equity despite having reason to know that it would not be able to meet its obligations under the Lease or pay any debts incurred thereunder.

146.     These transfers were made so that Lincoln Park Climbing's affiliate companies would receive funds before Plaintiff received the funds it was owed under the Lease.

147.     Lincoln Park Climbing made these transfer to hinder or delay its obligation to pay Plaintiff both before and after defaulting on the Lease.

148.     During the Lease Term, Lincoln Park Climbing concealed these transfers from Plaintiff despite knowing that Lincoln Park Climbing would be unable to pay rent and other fees owed under the Lease.

149.     Brooklyn Boulders Investments similarly concealed these transfers and did not notify Plaintiff that it was receiving funds from Lincoln Park Climbing despite having reason to know that Lincoln Park Climbing would not be able to pay any debts incurred under the Lease.

150.     Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it began to transfer funds to its affiliate companies and did so in an effort to diminish its ability to pay Plaintiff.

151.     Lincoln Park Climbing made ongoing and regular payments to its affiliate companies including Brooklyn Boulders Investments and Taglich Private Equity. These transfers consisted of a substantial amount of Lincoln Park Climbing's assets.

152.     Less than a year into the Lease, Lincoln Park Climbing defaulted on the Lease.

153.     Upon information and belief, Brooklyn Boulders Investments, through Kurnov, knew that Lincoln Park Climbing defaulted on its Lease with Plaintiff.

154.     After defaulting on the Lease, Lincoln Park Climbing transferred funds to its parent and affiliate companies, including Brooklyn Boulders Investments and Taglich Private Equity.

155.     These transfers were made so that Lincoln Park Climbing's affiliate companies would receive funds before Plaintiff received the funds it was owed under the Lease and from the resulting default.

156.     Lincoln Park Climbing made these transfer to hinder or delay its obligation to pay Plaintiff after defaulting on the Lease.

157.     During the Lease Term, Lincoln Park Climbing concealed these transfers from Plaintiff despite knowing that Lincoln Park Climbing was in default and that it could not pay its debts.

158.     Brooklyn Boulders Investments did not notify Plaintiff it had received these transfers at the time they were made.

159.     Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it began to transfer funds to its affiliate companies and did so in an effort to diminish its ability to pay Plaintiff.

160.     Upon information and belief, at the time the transfers were made, these transfers consisted of a substantial amount of Lincoln Park Climbing's assets.

161.     Plaintiff, as Lincoln Park Climbing's creditor, is entitled to the amount of any such transfer of funds that were made once Lincoln Park Climbing had reason to believe it would not be able to meet its obligations under the Lease.

162.     To date, Plaintiff has not received such payments.

163.     Plaintiff, as Lincoln Park Climbing's creditor, is entitled to the amount of any such transfer of funds.

WHEREFORE, Plaintiff requests judgement in its favor and against Defendant Brooklyn Boulders Investments, LLC in the sum to be determined at trial, but not less than the value of the assets at the time they were transferred subject to any adjustments approved by this Court or such other amount to be proven at trial, Plaintiff's costs associated with replacing the equipment

improperly sold by the Defendant, Plaintiff's reasonable attorneys' fees and costs of suit, and for any other relief this Court deems just and reasonable.

## COUNT IV—Plaintiff v. Taglich Private Equity, LLC

### *Violation of the Uniform Fraudulent Transfer Act*

164.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

165.    At all times relevant to the allegations of this Complaint, there existed 740 ILCS 160/1, *et seq.,* more commonly referred to as the Uniform Fraudulent Transfer Act (the "UFTA").

166.    Section 5(a)(1) of the UFTA states:

    a.  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation.
       (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
       (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
          (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
          (B) intended to incur or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

167.    Pursuant to 740 ILCS 160/9, a creditor may recover judgment for the value of assets transferred at the time of the transfer subject to adjustments.

168.    Pursuant to 740 ILCS 160/9(b)(1) and (2), (b) a creditor may recover judgment (1) the first transferee of the asset or the person for whose benefit the transfer was made; or (2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.

### *Lincoln Park Climbing Sells its Equipment and Transfers the Proceeds to Its Affiliates*

169.    Plaintiff held a security interest in Lincoln Park Climbing's personal property.

170. Brooklyn Boulder Investments and Taglich Private Equity, through Gary Kurnov, were aware of Lincoln Park Climbing's Lease Agreement with Plaintiff and Lincoln Park Climbing's financial situation at all relevant times to the events of this Complaint.

171. Taglich Private Equity, through Kurnov, was aware that Plaintiff held a security interest in Lincoln Park Climbing's personal property including its gym and climbing equipment.

172. During the Lease Term, Lincoln Park Climbing sold approximately $750,000 of personal property consisting primarily of gym and climbing equipment.

173. This equipment rightfully belonged to Plaintiff as the lienholder and was required for Plaintiff to lease the Premises as a rock climbing gym.

174. Plaintiff, however, did not receive any payments following the sale of the equipment.

175. Instead, Plaintiff learned that Lincoln Park Climbing made payments to its affiliate and parent companies, Brooklyn Boulder Investments and Taglich Private Equity, out of the proceeds from the sale.

176. Lincoln Park Climbing transferred the proceeds from the sale with the intent to prevent Plaintiff from receiving said funds.

177. The proceeds from the sale were transferred by Lincoln Park Climbing to its affiliates once Lincoln Park Climbing had reason to believe that it would be incurring debts that it would be unable to pay.

178. The payments from the sale of Lincoln Park's personal property were fraudulent as Plaintiff had a security interest in the properties that were sold.

179. Lincoln Park Climbing's transfers were to insider entities including its parent companies, Brooklyn Boulders Investments and Taglich Private Equity.

180.    Lincoln Park Climbing concealed the sale of the equipment and did not notify Plaintiff of the sale until after it was effectuated. Indeed, Plaintiff was not notified of the date of the sale.

181.    Taglich Private Equity did not notify Plaintiff that the sale of Lincoln Park's climbing had taken place.

182.    Taglich Private Equity did not notify Plaintiff that it received payments from Lincoln Park Climbing's sale of Lincoln Park Climbing's personal property.

183.    Upon information and belief, the sale of this equipment was made at or near the same time Lincoln Park Climbing had reason to believe it would be unable to make its necessary payments under the Lease.

184.    Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it made the sale, but it effectuated the sale in an effort to diminish its ability to pay its debts to Plaintiff.

185.    Taglich Private Equity, through Kurnov, knew that Lincoln Park Climbing had reason to believe it would not be able to meet its obligations under the Lease.

186.    Taglich Private Equity, through Kurnov, knew of the possibility that legal action may be taken against Lincoln Park Climbing due to its inability to meet its obligations under the Lease.

187.    The sale of this equipment consisted of a substantial amount of Lincoln Park Climbing's physical assets.

188.    Furthermore, Lincoln Park Climbing sold this personal property, including gym equipment and the equipment needed to operate a rock climbing gym, for a substantially lower amount than its commercial value.

189.    Moreover, Lincoln Park Climbing sold various items such as crash pads that were essential to the operation of its business at the Premises.

190.    As a result of the sale of these items, the Premises was rendered largely unusable for an extended period of time.

191.    To date, Plaintiff has not received payments from Lincoln Park Climbing related to the personal property and equipment that it held a security interest in.

***Separate and Apart from the Sale of the Equipment, Lincoln Park Climbing Transferred Funds to Its Affiliates During the Lease Term***

192.    Upon information and belief, after assuming its obligations under the Lease, Lincoln Park Climbing had reason to believe that it would not be able to maintain its obligations through the remainder of the Lease Term.

193.    Taglich Private Equity also had reason to believe that Lincoln Park Climbing would not be able to maintain its obligations through the remainder of the Lease Term.

194.    Taglich Private Equity and Lincoln Park Climbing reasonably knew that Lincoln Park Climbing would be unable to pay any debts incurred under the Lease.

195.    Subsequently, Lincoln Park Climbing transferred funds to its parent and affiliate companies, including Brooklyn Boulders Investments and Taglich Private Equity despite having reason to know that it would not be able to meet its obligations under the Lease or pay any debts incurred thereunder.

196.    These transfers were made so that Lincoln Park Climbing's affiliate companies would receive funds before Plaintiff received the funds it was owed under the Lease.

197.    Lincoln Park Climbing made these transfer to hinder or delay its obligation to pay Plaintiff both before and after defaulting on the Lease.

198.    During the Lease Term, Lincoln Park Climbing concealed these transfers from Plaintiff despite knowing that Lincoln Park Climbing would be unable to pay rent and other fees owed under the Lease.

199.    Taglich Private Equity similarly concealed these transfers and did not notify Plaintiff that it was receiving funds from Lincoln Park Climbing despite having reason to know that Lincoln Park Climbing would not be able to pay any debts incurred under the Lease.

200.    Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it began to transfer funds to its affiliate companies and did so in an effort to diminish its ability to pay Plaintiff.

201.    Lincoln Park Climbing made ongoing and regular payments to its affiliate companies including Brooklyn Boulders Investments and Taglich Private Equity. These transfers consisted of a substantial amount of Lincoln Park Climbing's assets.

202.    Less than a year into the Lease, Lincoln Park Climbing defaulted on the Lease.

203.    Upon information and belief, Taglich Private Equity, through Kurnov, knew that Lincoln Park Climbing defaulted on its Lease with Plaintiff.

204.    After defaulting on the Lease, Lincoln Park Climbing transferred funds to its parent and affiliate companies, including Brooklyn Boulders Investments and Taglich Private Equity.

205.    These transfers were made so that Lincoln Park Climbing's affiliate companies would receive funds before Plaintiff received the funds it was owed under the Lease and from the resulting default.

206.    Lincoln Park Climbing made these transfer to hinder or delay its obligation to pay Plaintiff after defaulting on the Lease.

207. During the Lease Term, Lincoln Park Climbing concealed these transfers from Plaintiff despite knowing that Lincoln Park Climbing was in default and that it could not pay its debts.

208. Taglich Private Equity did not notify Plaintiff it had received these transfers at the time they were made.

209. Lincoln Park Climbing knew of the possibility that legal action may be taken against it by Plaintiff at the time it began to transfer funds to its affiliate companies and did so in an effort to diminish its ability to pay Plaintiff.

210. Upon information and belief, at the time the transfers were made, these transfers consisted of a substantial amount of Lincoln Park Climbing's assets.

211. Plaintiff, as Lincoln Park Climbing's creditor, is entitled to the amount of any such transfer of funds that were made once Lincoln Park Climbing had reason to believe it would not be able to meet its obligations under the Lease.

212. To date, Plaintiff has not received such payments.

213. Plaintiff, as Lincoln Park Climbing's creditor, is entitled to the amount of any such transfer of funds.

WHEREFORE, Plaintiff requests judgement in its favor and against Defendant Taglich Private Equity, LLC in the sum to be determined at trial, but not less than the value of the assets at the time they were transferred subject to any adjustments approved by this Court or such other amount to be proven at trial, Plaintiff's costs associated with replacing the equipment improperly sold by the Defendant, Plaintiff's reasonable attorneys' fees and costs of suit, and for any other relief this Court deems just and reasonable.

## COUNT V—Plaintiff v. Gary Kurnov
### *Fraud*

214.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

215.     On June 13, 2022, Plaintiff's agent and principal spoke with Kurnov over the phone regarding Lincoln Park Climbing's failure to pay its property taxes.

216.     During the call, Plaintiff made a demand for the unpaid taxes owed to Plaintiff under the Lease.

217.     In response, Kurnov stated that Lincoln Park Climbing's inability to pay the taxes was temporary.

218.     Indeed, Kurnov represented that Lincoln Park Climbing would be receiving funds in the form of an Employee Retention Tax Credit.

219.     The purpose of Kurnov referencing the Employee Retention Tax Credit in this conversation was to imply that the funds would be used to offset any unpaid balances.

220.     Kurnov reassured Plaintiff that the payments would be made at a later time and that Lincoln Park Climbing needed time for the Employee Retention Tax Credit to come in to make the payment.

221.     Plaintiff took these statements as true.

222.     Plaintiff did not enforce its rights to payment or possession of the Premises under the Lease given Kurnov's representations that Lincoln Park Climbing would be receiving the Employee Retention Tax Credits and paying its share of the property taxes.

223.     Kurnov's representations, however, were false.

224.     On August 1, 2022 Lincoln Park Climbing became delinquent on its rent.

225.    On August 19, 2022, Plaintiff and Kurnov, along with their respective attorneys, attended a conference call.

226.    On the August 19, 2022 call, Kurnov represented that Lincoln Park Climbing was shutting down operations and would not make any additional payments under the Lease.

227.    Kurnov further revealed that Lincoln Park Climbing was never owed money under an Employee Retention Tax Credit.

228.    Kurnov knew that Lincoln Park Climbing would not be receiving the Employee Retention Tax Credit when he represented that it would during the June 13, 2022 call.

229.    Kurnov made these statements during the June 13, 2022 so that Plaintiff would not exercise its rights to immediate payment, possession of the Premises, or otherwise terminate the Lease agreement or seek further remedy.

230.    Plaintiff was harmed in that Plaintiff was induced into not exercising its rights under the Lease and seeking to sublet the Premises at a sooner time.

231.    Moreover, had Plaintiff terminated Lincoln Park Climbing's right to possession after the June 13, 2022 call rather than waiting for the Employee Retention Tax Credits, Lincoln Park Climbing would not have been able to sell the personal property in its possession.

WHEREFORE, Plaintiff requests judgement in its favor and against Defendant Gary Kurnov in the sum to be determined at trial, punitive damages, Plaintiff's reasonable attorneys' fees and costs of suit, and for any other relief this Court deems just and reasonable.

## **JURY DEMAND**

Plaintiff hereby demands a jury for all claims set forth herein that are triable by jury

Respectfully submitted,

By:/s/ _John C. Ellis_____.
     One of Plaintiff's Attorneys

John C. Ellis
David DeSchepper
Ellis Legal P.C. (Firm No. 59328)
200 W. Madison, Suite 2670
Chicago, Illinois 60606
(312) 967-7629
jellis@ellislegal.com
ddeschepper@ellislegal.com

Michael K. Forde
Forde & O'Meara LLP
191 N. Wacker Drive, 31st Floor
Chicago, IL 60606
mforde@fordellp.com